## Garrett's Estate.

*Wills—Construction—Intention—"Next of kin in accordance with intestate laws."*

1. A husband is not the next of kin to his wife, nor is she of next of kin to him, but the technical meaning of "next of kin" when used in a will must give way to a manifest intention of the testatrix that the objects of her bounty should include a surviving husband.

2. A testatrix made a bequest to a named beneficiary and subsequently by codicil provided: "I further will and direct that in case of the death before my own decease of......any of the legatees named in my will, the legacy of such legatee so dying shall not lapse but shall be paid by my executors to his or her next of kin in accordance with the intestate laws of the State of Pennsylvania." The beneficiary died in the lifetime of the testatrix leaving her surviving a husband and five children. *Held,* that the bequest should be distributed among those who would take her estate under the intestate laws, including the surviving husband.

Argued March 25, 1915. Appeal, No. 113, Jan. T., 1915, by Charles B. Dunn, from decree of O. C. Phila-

Assignment of Error—Opinion of the Court. [249 Pa.
delphia Co., Oct. T., 1913, No. 228, dismissing exceptions
to adjudication in Estate of Julia Garrett, deceased.
Before Brown, C. J., Mestrezat, Potter, Elkin and
Moschzisker, JJ.　Reversed.

Exceptions to adjudication.　Before Lamorelle, J.

The opinion of the Supreme Court states the case.

The court dismissed the exceptions.　Charles B. Dunn
appealed.

*Error assigned* was in dismissing the exceptions.

*John G. Johnson,* with him *Maurice Bower Saul,* for
appellant.

No paper book for appellee.

Opinion by Mr. Chief Justice Brown, April 19, 1915:
Julia Garret by her will and first codicil thereto made
a number of bequests, among them one of $25,000 to
Margaret H. Dunn. By a second codicil she provided as
follows: "I further will and direct that in case of the
death before my own decease of either of the above
named legatees or of any of the legatees named in my
will and the first codicil thereto, the legacy of such
legatee so dying shall not lapse, but shall be paid by my
executors to his or her next of kin in accordance with
the intestate laws of the State of Pennsylvania." Mar-
garet H. Dunn died in the lifetime of the testatrix, and,
in distributing her estate, the court below awarded the
bequest to Mrs. Dunn to the latter's five children, ex-
cluding the surviving husband from any participation in
it. From this he has appealed, on the ground that the
testatrix intended that the bequest of $25,000 to his
wife should be distributed among those who would take
her estate under the intestate laws of the State, which
give a husband an equal share with the children in the
personal estate of his wife.

A husband is not of next of kin to his wife, nor is she of next of kin to him, and if by the second codicil to the will testatrix had merely provided that, upon the death of any legatee during her lifetime, the legacy should not lapse, but be paid to the next of kin of the deceased legatee, the present appeal would be groundless, for the words "next of kin" would have to be given their strict technical meaning. The learned court below felt constrained to give them that meaning, in construing the will of the testatrix, because it regarded Storer v. Wheatley's Executors, 1 Pa. 506, and Ivins's App., 106 Pa. 176, as binding authorities for its action.

The words "heirs" and "next of kin" have a well understood legal meaning, and, in the absence of any intention by the testatrix, to be gathered from her will, to give them a popular or other meaning, their technical meaning would have to prevail, for she would be presumed to have used them in their technical sense; but if it is clear that she did not intend to so use them, her intention as to the distribution of her estate must prevail in spite of them. No inapt use of words by a testator may defeat his manifest intention, unless they compel the application of some rule of law which itself defeats testamentary intention. An illustration of this is the rule in Shelley's Case; but no such situation is here presented, and the intention of the testatrix, as gathered from her second codicil, must be given effect.

But for the two cases upon which the court below relied, its decree of distribution would evidently have included the appellant, for its learned president judge, in speaking for it, said: "In the absence of authority we would incline to the view that when the testatrix referred to 'next of kin under the intestate laws of the State of Pennsylvania,' she used those words not in the strictly technical but in the more popular and perhaps more reasonable sense and intended to refer to the persons entitled under the intestate laws and so to include a husband or wife although technically not 'next of kin.'

We are however bound by the authorities." Nothing is
to be found in Storer v. Wheatley's Executors or Ivins's
Appeal which conflicts with the rule everywhere recog-
nized, that if a testator intends next of kin to be deemed
to be such as would take under the statute of distribu-
tion, his intention cannot be defeated by giving a strict,
technical meaning to the words. In the first case Chief
Justice GIBSON, after saying that, after all, the question
before the court was as to the intention of the testator in
using the words "relations or connections," proceeded to
demonstrate from the will itself that he did not intend
that his wife should be regarded as one of his "relations
or connections," to whom he bequeathed a portion of his
estate in the event of his daughter's death before attain-
ing her majority. In the second case, Ivins's App., Mr.
Justice GREEN, at the threshold of his opinion, said: "It
has been so often held that when technical words are
used in a will or other instrument they must have their
technical meaning, unless a contrary intent appear, that
it would be a mere affectation of learning to cite the
authorities. On the question of intent, in this case, the
will and codicil abound with evidence that the intention
of the testator corresponded precisely with the strict
legal meaning of the words used." The learned justice
then went on to show that the intention of the testator,
as gathered from the whole will, was to use the words
"heirs" and "next of kin" in their strict legal sense. In
the will before us there is nothing to indicate that the
testatrix intended that only the next of kin, in the strict
legal meaning of those words, should take the legacy of
$25,000. Her intention is to be gathered from the sec-
ond codicil alone, and the only reasonable meaning to be
given to its words is that she intended to save every leg-
acy to a deceased legatee to those who would take from
him or her under the intestate laws of the State. The
words "next of kin" are to be regarded as superfluous or
as having been used by the testatrix in their popular
sense, meaning those who are entitled to the personal
estate of a decedent under the statute of distribution.

Decree reversed and record remitted that distribution may be made in accordance with the view herein expressed, the costs to be paid out of the fund to be distributed.