Farmers Trust Company, Executor, *v.* Wilson et ux., Appellants.

44

Argued November 10, 1948. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*E. M. Biddle, Jr.,* with him *Merrill F. Hummel,* for appellants.

*F. Eugene Reader,* with him *Harold S. Irwin,* for appellee.

OPINION BY MR. JUSTICE JONES, January 3, 1949:

These appeals are from a judgment in ejectment entered on the pleadings, the relevant facts of the case not being in dispute. The question of law involved is whether the testatrix intended a devise in remainder to her heirs at law to go to such persons only as would be her heirs according to the law as it existed at the time of the execution of her will or such as were her heirs under the law in force at the date of her death. The learned court below took the latter view and entered judgment accordingly.

The circumstances in which the question arises are as follows.

Mrs. Polatus E. Bricker of Cumberland County, Pennsylvania, died testate on September 9, 1918, seized of the title in fee to a farm. She left to survive her her husband, Benjamin F. Bricker, but no issue, her nearest of kin being a sister, Bianci A. Wilson, wife of William D. Wilson. The testatrix had executed her will on September 28, 1906; and, at that time, as well, her nearest of kin was her sister. The will provided in presently important part that ". . . In the event that my husband, Benjamin F. Bricker, shall survive me, . . . I give, devise, and bequeath all my estate, real, personal, and mixed, to my said husband for his use during his natural life, without the necessity of making an appraisement of the same, and at his death, I direct that the said estate shall go to my heirs at law."

By deed of March 19, 1932, Benjamin F. Bricker conveyed to William D. and Bianci A. Wilson "All the right, title, interest and estate as tenant for life of said Benjamin F. Bricker in and to" the farm here involved; and, by deed of January 5, 1945, William D. and Bianci A. Wilson (joined by their daughter, Helen I. Spatz, and the latter's husband) conveyed the farm to Nevin W. Wilson (a son of William D. and Bianci A. Wilson) and Nevin's wife, Cora. The latter grantees were the defendants below and are the appellants here. Their contention, which the learned trial judge rejected, is that, in construing Mrs. Bricker's will, the term "heirs at law" should be taken as meaning such persons as would be her heirs according to the law as it existed when she executed her will and that, consequently, Benjamin F. Bricker took but a life estate in the farm, the remainder in fee vesting in Bianci A. Wilson as Mrs. Bricker's presumptive sole heir at law.

The plaintiff and appellee, the Farmers Trust Company, executor of the will of Benjamin F. Bricker, deceased, contends that, as the surviving husband of the

testatrix, Benjamin F. Bricker was an heir of his wife at the time of her death, by reason of the relevant change wrought by the Intestate Act of 1917, and accordingly took under his wife's will (in addition to the specified life estate) a vested, undivided one-half of the farm in remainder to which interest his estate succeeded upon his death.

Both sides are agreed that the answer to the question for decision depends upon the testatrix's intent, as disclosed by her will, and that, as regards such intention, the will is to be construed as of the date of its execution: *Miller's Estate,* 323 Pa. 9, 15-16, 186 A. 99; *Whiteside's Estate,* 302 Pa. 452, 454, 153 A. 728; *Thompson v. Wanamaker's Trustee,* 268 Pa. 203, 210, 110 A. 770. Such matters as the testator's capacity, the legality of the execution of his dispositions, the nature and quantum of his estate, etc., are ordinarily "referable to the time and [are] determinative according to the law as it exists at the execution of the instrument": *Quin's Estate,* 144 Pa. 444, 459-460, 22 A. 965. But, even though testamentary intent is to be construed as of the date of execution of a will, if the words employed to express the intent have a legal or technical meaning, they are to be so interpreted according to the law in effect at the testator's death unless the will contains a clearly expressed intention to the contrary. For example, ". . . as there [can] be no heirs to the living, the rights of the distributees [so designated, are], of course, to be determined by the law existing at the testator's death [cases cited]": *Quin's Estate,* supra, at p. 460. And, so it is ". . . that a will speaks for some purposes from the period of execution, and for others from the death of the testator . . .": *Hitchcock v. Hitchcock,* 35 Pa. 393, 399.

In *Weidman's Appeal,* 2 Walker 359, 361, 42 Leg. Int. 338 (1885), Mr. Justice TRUNKEY quoted with approval for this court to the effect that "The question in expounding a will is not what the testator meant, but what is the meaning of his words." That pronounce-

ment has since been reiterated by the courts of this State many times without question down to the present: e.g., *Myers Estate,* 351 Pa. 472, 474, 41 A. 2d 570; *Rosengarten Estate,* 349 Pa. 32, 38, 36 A. 2d 310; *Brock Estate,* 156 Pa. Superior Ct. 616, 619, 41 A. 2d 347; *Tombs Estate,* 155 Pa. Superior Ct. 605, 609, 39 A. 2d 367; etc. The principle, of course, does not mean that, where a testator's intention is clear, it may be disregarded on the basis of a literal interpretation of his testamentary words. But, it does mean that a testator's intent is not to be arrived at by the expounder's subjective deductions as to what the testator might have meant, or even perhaps did mean, but did not say: cf. *Ludwick's Estate,* 269 Pa. 365, 371, 112 A. 543. The scope of the inquiry is limited to the meaning of what the testatrix said.

Whom, then, did Mrs. Bricker mean to embrace as the devisees of her farm in remainder upon the termination of her husband's life estate? Her will describes such intended beneficiaries as her "heirs at law",—a term of "known legal signification" (*Woods' Appeal* 18 Pa. 478, 481) and one "which, in a will, is to be understood in its legal or technical, and not in its popular sense, unless the contrary intent is so plainly apparent that it cannot be misunderstood": *Appeal of Dodge,* 106 Pa. 216, 220, and cases there cited. As a corollary, a rule of construction developed, which, long ago, was recognized in this State as well settled, to the effect that "a devise, or bequest to heirs, or heirs at law of a testator, or to his next of kin, will be construed as referring to those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will": *Buzby's Appeal,* 61 Pa. 111, 116. In *Stoler's Estate,* 293 Pa. 433, 435-436, 143 A. 121, Mr. Justice FRAZER, upon quoting the above from *Buzby's Appeal,* spoke of the rule of construction therein contained as "so long established in this Commonwealth as to be now considered elementary", and further said with respect to the legally implied testamentary intent embodied in the term "heirs

at law" with reference to the testator that it "is now so well recognized that nothing but the expression of a clear intention to the contrary in the will can be allowed to alter the rule: Tatham's Est., 250 Pa. 269, 276."

No such contrary intention is to be found in the will now under consideration. There is no testamentary intimation that the testatrix intended the term "heirs at law" to be construed otherwise than in the usual and ordinary way, i.e., according to its legal and technical meaning. Nor is there anything to indicate that the testatrix intended to limit her disposition of the remainder to such as would have been her heirs had she died immediately upon executing her will. In that suppositious state, she would have had but one heir, viz., her sister. If it had been her desire to limit the remainder to her sister alone, without admitting others to the category of heirs at the time of her death, all that would have been necessary for her to do to insure that result (save for after-born children) would have been to devise her property in remainder to her sister *eo nomine*. But, that she did not do.

In view of the circumstances in which the testatrix so employed the term "heirs at law," it is, rightly, to be taken in its inclusory, and not exclusory, sense. There is neither reasonable nor logical ground under the will or the law for presuming that the testatrix intended to exclude her husband as a remainderman in case he later qualified as one of her "heirs at law". Her use of the term "heirs" in the given connection was "a strong indication that [she] had no particular persons in view as the [ultimate] favorite objects of [her] bounty, and that [she] looked to the period of [her] death as the time for ascertaining the persons who were to take under that description": see *Woods' Appeal*, supra, at p. 481; or, as otherwise stated, "as [the testator] gave the estate to those persons to whom the law would give it in the case of intestacy, he cannot be said to have had any particular class of heirs or next of kin in view, and he

committed the question of determining who should take to the law itself": *Kohler's Estate,* 199 Pa. 455, 457, 49 A. 286. Testamentary designations of distributees as "heirs", "next of kin" or "those entitled under the intestate laws" include persons who so qualify according to the law extant at the testator's death: cf. *Smith's Estate,* 314 Pa. 437, 440, 171 A. 587; *Quin's Estate,* supra; also Restatement, Property, § 245. Nor does the fact that the will gave the husband a life estate operate to limit or restrict the scope of the term "heirs at law" so as to exclude him from the classification if, in fact, he proved to be an heir of his wife upon her death: see *Smith's Estate,* supra, at p. 440; *Bache's Estate,* 246 Pa. 276, 279, 92 A. 304; *Fitzpatrick's Estate,* 233 Pa. 33, 35, 81 A. 815; *McFillin's Estate,* 235 Pa. 175, 177, 83 A. 620; *Buzby's Appeal,* supra, at p. 116; *Barge's Estate,* 126 Pa. Superior Ct. 332, 335-336, 191 A. 184.

Inasmuch as the will does not evidence an intention that the term "heirs at law" should be construed otherwise than in its legal and technical sense, it necessarily follows, as a matter of law, that the testatrix intended that the beneficiaries in remainder should be determined as of the date of her death in accordance with contemporaneously existing law. In *Kohler's Estate,* supra, Mr. Justice MITCHELL declared the rule to be that "a testator who commits the distribution of his estate to the law, upon the happening of an event necessarily future, must reasonably be presumed to have contemplated the possibility of a change in the law in the meantime." Also in *Woods' Appeal,* supra, the same rule as to the effect of a change in the law of descent between the time of the execution of a will and the date of the testator's death had, likewise, been recognized and applied. Restatement, Property, § 245, Comment c, aptly confirms, with respect to "Statutes defining 'heirs' or 'intestate share' ", that "When a will describes the takers of a gift as the 'heirs' of the testator . . . [he] is con-

strued to have intended respectively his donees, or the size of his gift, to be subject to alteration by changes of law which occur after the execution of his will. . . ."

With the testatrix's intention to use the term "heirs at law" in its legal and technical sense thus established, the instant case is not to be distinguished in principle from either *Woods' Appeal* or *Kohler's Estate, supra.* And, the appellants have not advanced any valid reason why we should now depart from the pertinent general rule of construction applied in those cases. ". . . it is important to the peace of society and to the stability of titles" that the rule be not lightly relaxed: see *Woods' Appeal, supra*, at p. 482.

*Troxell's Estate*, 90 Pa. Superior Ct. 533, upon which the appellants largely rely, is not in point. In that case, a testatrix had devised property to her son and a granddaughter for their lives, further providing that, upon the death of either of them, the share of the one so dying was to go to his or her heirs. The testatrix was held to have intended as remaindermen only such persons as proved to be heirs of the son or granddaughter according to the law existing at the time of the testatrix's death rather than at the death of a respective life tenant. The case is in no sense authority for the proposition that the heirs should be determined according to the law existing *at the time of the execution of the will.* Incidentally, the decision in *Troxell's Estate, supra*, would have been different under the provisions of the Act of June 29, 1923, P. L. 914, Sec. 1, 21 PS § 11, which, while on the statute books at the time of the decision, was not retroactively applicable to the operative will in that case. Most of the remaining cases cited and relied upon by the appellants were painstakingly distinguished in *Quin's Estate, supra*, at pp. 459 and 460 and need not be further discussed here.

Judgment affirmed.