## Cope Estate

*M. Paul Smith* and *MacCoy, Evans & Lewis,* for accountant.

*Daniel B. Brandschain* and *Walter Summerfield,* for administrator of estate of Louisa Coale.

*Edward J. Ozorowski* and *Mitchell Kramer,* for Commonwealth.

TAXIS, P. J., December 2, 1959.— . . . The reason or purpose of the filing of the account now before the court is the death of the life beneficiary, Louisa Coale, on December 23, 1958. Her death terminated the trust.

The transfer inheritance tax has been paid.

A dispute concerning the distribution of the remainder in this estate has arisen. The relevant facts, none of which are in dispute, are as follows:

Testator, Edgar Cope, died on June 9, 1895, leaving a will dated March 29, 1887. In this will testator created a life estate in favor of Louisa Coale, and on her death directed the trustees:

". . . to pay, transfer and set over, the sum of *Twenty Thousand Dollars*, so directed to be invested as above set forth, unto such of the children of the said Louisa Coale, if any she have, as may survive her, and the issue of such as may be deceased, in equal shares such issue to take only the share which their deceased parents would have taken if living;

"*And* in case of the decease of the said Louisa Coale leaving no children nor the issue of such, her surviving, then to pay transfer and set over the same to such person or persons as the said Louisa Coale may by her last will and

(Testament)

"Testament, designate and direct, and in default of such designation and direction, by Will of said Louisa Coale, then to pay, transfer and set over the same to her next of kin, in equal shares."

Testator was survived by Louisa Coale, who apparently never married and who died on December 23, 1958, leaving no issue. Louisa Coale died intestate and hence never exercised power of appointment given her in the will of testator recited above. At her death Louisa Coale was survived by 13 first cousins once removed. The problem presented is whether Louisa

Coale's "next of kin" are to be determined under the terms of the statute in effect at the time of the death of testator, namely, the Act of April 8, 1833, P. L. 315, or under the terms of the statute in effect at the time of the death of the life tenant, the Intestate Act of April 24, 1947, P. L. 80, sec. 3(6), 20 PS §1.3. If the former applies, the estate will descend to the 13 cousins once removed of Louisa Coale; if the latter, the estate descends to the Commonwealth of Pennsylvania as statutory heir.

As in all cases of this type, the intent of testator controls. After a careful review of the instrument and the able briefs of counsel, it is my conclusion that this testator intended the "next of kin" of Louisa Coale to be determined under the law in existence at the time of his death, namely, the Act of 1833.

Initially it must be observed that the term "next of kin" has for most purposes the same meaning as "heirs" or "heirs at law" and refers to those persons who qualify as the named ancestors and estate heirs under the applicable statute. See Farmers Trust Company v. Wilson, 361 Pa. 43, 49.

A problem similar to the one at hand was considered in Troxell's Estate, 90 Pa. Superior Ct. 533, where it was decided that testatrix intended as remaindermen such persons as proved to be heirs of the life tenant according to the law existing at the time of testatrix' death rather than at the death of the life tenant. The court, at page 538, quoted with approval from 1 Page on Wills, 2d ed., p. 1489, as follows:

" 'Whether a gift to "heirs" means those who would take under statutes in force when testator makes his will, when he dies, or when the gift vests, is a question on which there is conflict of authority. It has been held that a lesser degree of contingency is always to be preferred; and that statutes in force when the will is made are intended.' Certainly, after the death of

testatrix and the probate of her will, the object of her bounty ought not be subject (in the words of the California decision cited [Wilson's Estate, 65 Cal. App. 680, 225 Pac. 283]) to the 'biennially recurring contingency of a change in the statute.' "

In attempting to ascertain testator's intent, initially it must be observed that it is highly improbable that this testator intended the Commonwealth of Pennsylvania to be his heir, especially in light of the fact that the Commonwealth did not achieve the status of an heir until 1947, under the act cited. Furthermore, it is well settled that a testator's use of the words "next of kin" indicates an intention to confine his heirs to those possessing a blood relation to him, a position, of course, which the Commonwealth does not enjoy. See Stoler's Estate, 293 Pa. 433, and Freeman's Estate (No. 1), 40 Pa. Superior Ct. 31.

The Commonwealth has cited numerous cases in which "heirs" or "next of kin" have been ascertained under the terms of the intestate laws in effect at the death of the life beneficiary, as opposed to the laws in effect at the death of testator. However, as the cousins once removed of the life beneficiary have accurately pointed out, the bulk of these cases either contain an *express direction* that the heirs be determined at the time of the death of the life beneficiary, which direction clearly identifies the testator's intent (Seibert Trust, 71 D. & C. 76), or involve an adoption or legitimation made after the death of testator: Kohler's Estate, 199 Pa. 455; Miller's Appeal, 52 Pa. 113; Seitzinger's Estate, 170 Pa. 500, 528.

The Commonwealth has also pointed to A. L. I. Restatement of the Law of Property, §308, in support of their contention that the law in effect at the date of death of the life beneficiary controls in this case. This section reads:

"When a limitation is in favor of the . . . 'next

of kin' . . . of a designated person . . . and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, *unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances.*" (Italics supplied.)

No cases have been cited in which this section of the Restatement has been specifically adopted as the law of Pennsylvania. However, even assuming, arguendo, that the law in Pennsylvania adopts the Restatement position, the present case *does contain language and circumstances* which indicate that testator's intent was to refer to the law in effect at the time of his death for ascertaining the next of kin of the life beneficiary of his trust. In Worth's Estate, 4 Chester 165, relied upon by the Commonwealth, the court concluded, after observing that in that case testator had only one next of kin, his brother, at the time of executing his will, that testator could not have intended his next of kin to be ascertained by the law in effect at the time of his death. The circumstances in the present case, however, compel the opposite conclusion.

The Commonwealth also argued that Louisa Coale in effect received a fee simple, not merely a life estate coupled with the power of appointment with default provisions in favor of her heirs. If such is the case, then Louisa Coale would have died intestate seized of the fee, which, the Commonwealth points out, would descend to the Commonwealth under the terms of the Intestate Act of 1947. The Commonwealth's position, however, requires the application of the rule in Shelley's case which is operative only as to realty and which has been held to be inapplicable to bequests of personalty: Hurd's Estate, 305 Pa. 394.

Accordingly, the net ascertained balance of principal and the income which accrued after December 23, 1958, the date of the death of Louisa Coale, the life beneficiary, are awarded to the next of kin of the deceased life tenant, Louisa Coale, as determined under the terms of the Act of 1833. The income which accrued and remains unpaid to December 23, 1958, is awarded the executor or administrator when duly appointed of Louisa Coale, deceased. . . .